IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION


TIMOTHY CULWELL                    )
                                   )
v.                                 )        No. 2:13-0126
                                   )
CAROLYN W. COLVIN,                 )
        Acting Commissioner of     )
        Social Security            )


To: The Honorable Kevin H. Sharp, Chief District Judge


## REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for Supplemental Security Income ("SSI"), as provided by the Social Security Act ("Act").

Upon review of the administrative record as a whole, the Court finds that the Commissioner's determination that Plaintiff is not disabled under the Act is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g), and that Plaintiff's motion for judgment on the administrative record (Docket Entry No. 14) should be DENIED.


## I. INTRODUCTION

Plaintiff protectively filed an application for SSI on August 19, 2010. *See* Transcript of the Administrative Record (Docket Entry No. 10),[1] at 82. He alleged a disability onset date of April 8,

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s).

2010.  He asserted that he was unable to work because of a total reconstruction of his right ankle, a bulging disc, knee problems, right shoulder problems, high blood pressure, and a mental disorder. AR 88, 96.  His claims were denied initially and upon reconsideration.  AR 82-83, 94-96.  A hearing was held before Administrative Law Judge ("ALJ") J. Dennis Reap on April 12, 2012.  AR 35-63. The ALJ issued an unfavorable decision on June 4, 2012.  AR 18-30.  On September 27, 2013, the Appeals Council denied Plaintiff's request for review, AR 1-5, thereby making the ALJ's decision the final decision of the Commissioner.  This civil action was thereafter timely filed, and the Court has jurisdiction.  42 U.S.C. § 405(g).

Of note, Plaintiff previously filed for SSI on November 29, 2007.  AR 21.  That application was denied on April 7, 2010, following a hearing before ALJ Joan A. Lawrence.  AR 64-77. Plaintiff filed his second application for SSI on August 19, 2010, as referenced above.

## II. THE ALJ'S FINDINGS

The ALJ issued his unfavorable decision on June 4, 2012.  AR 18-30.  Based upon the record, the ALJ made the following enumerated findings:

1.    The claimant has not engaged in substantial gainful activity since August 19, 2010, the application date (20 CFR 416.971 *et seq*.).

2.    The claimant has the following severe impairments: status post right ankle surgical procedures for fractures sustained in a motor vehicle accident, history of closed head injury (CHI), dysthymic disorder, anxiety disorder (20 CFR 416.920(c)).

***

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

***

4.     The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) that is further limited by standing and/or walking one hour in an eight-hour workday, and occasional climbing of stairs, balancing, stooping, bending, crouching, crawling, or kneeling. He can never climb ladders. The claimant can understand and remember one to three step tasks, maintain attention and concentration for two-hour periods, relate to the public on a superficial basis, adapt to gradual change, and set limited goals.

***

5.     The claimant is unable to perform any past relevant work (20 CFR 416.965).

***

6.     The claimant was born on December 25, 1968 and was 41 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7.     The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

***

10.    The claimant has not been under a disability, as defined in the Social Security Act, since August 19, 2010, the date the application was filed (20 CFR 415.920(g)).

AR 23-30.

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. The Court will therefore discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision, and the only questions before this Court are whether the decision of the Commissioner is supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his conclusion. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241

(6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

The Commissioner must employ a five-step evaluation process in determining the issue of disability. *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)). The original burden of establishing disability is on the plaintiff, and impairments must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 1382c(a)(3)(D); 20 CFR §§ 404.1512(a), (c), 404.1513(d). First, the plaintiff must show that he is not engaged in "substantial gainful activity" at the time he seeks disability benefits. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 CFR §§ 404.1520(b), 416.920(b). A plaintiff who is performing substantial gainful activity is not disabled no matter how severe the plaintiff's medical condition may be. *See, e.g., Dinkel v. Sec'y of Health & Human Servs.*, 910 F.2d 315, 318 (6th Cir. 1990).

Second, the plaintiff must show that he suffers from a severe impairment that meets the twelve month durational requirement. 20 CFR §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 Fed. Appx. 83, 85 (6th Cir. 2004). A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Barnhart*

*v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376, 157 L. Ed.2d 333 (2003) (citing 20 CFR §§ 404.1520(c), 416.920(c)).  Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 CFR § 404.1521(b).  The Commissioner is required to consider the combined effects of impairments that individually are not severe but cumulatively may constitute a severe impairment.  42 U.S.C. § 423(d)(2)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988).

Third, if the plaintiff is not engaging in substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the plaintiff is presumed disabled without further inquiry, regardless of age, education or work experience.  *Id.* (citing 20 CFR §§ 404.1520(d), 416.920(d)).  The plaintiff may establish that he meets or equals a listed impairment, and that the impairment has lasted or is expected to last for at least twelve months or result in death. *See Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 350 (6th Cir. 1988).  The plaintiff is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability.  *See Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

Fourth, if the plaintiff's impairment does not prevent him from doing his past relevant work, he is not disabled.  *Id.*  The plaintiff has the burden of proving inability to perform past relevant work, or proving that a particular past job should not be considered relevant.  *Cruse*, 502 F.3d at 539;

*Jones*, 336 F.3d at 474 ("Through step four, the [plaintiff] bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work"); *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 109 (6th Cir. 1989). If the plaintiff fails to carry this burden, he must be denied disability benefits.

Once the plaintiff establishes a *prima facie* case that he is unable to perform his prior relevant employment, the burden shifts in step five to the Commissioner to show that the plaintiff can perform other substantial gainful employment, and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a plaintiff can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). It remains the plaintiff's burden to prove the extent of his functional limitations. *Her*, 203 F.3d at 391. Even if the plaintiff's impairment does prevent him from doing his past relevant work, if other work exists in significant numbers in the national economy that the plaintiff can perform, he is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 CFR § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a plaintiff's claim at step two of the evaluative process is appropriate in some circumstances).

### B. The ALJ's Five-Step Inquiry for Plaintiff

The ALJ found that Plaintiff met the first two steps, AR 23, but was not presumptively disabled because he did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. AR 23-24. However, the ALJ found that Plaintiff was unable to perform any past relevant work, AR 28-29, thus triggering the fifth step of the inquiry. At the fifth step, the ALJ found that Plaintiff's residual functional capacity ("RFC") allowed him to perform sedentary work with certain limitations as set out in his findings, AR 25-28, and that, considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 29-30.

### C. Plaintiff's Assertions of Error

Plaintiff argues that the ALJ erred by: (1) rejecting the opinion of Plaintiff's treating physician; (2) failing to consider the combined effect of Plaintiff's multiple impairments; and (3) failing to find Plaintiff's testimony to be fully credible. *See* Docket Entry 13 at 3-4. Plaintiff argues that the Commissioner's decision should therefore be reversed, or in the alternative, remanded for further consideration by a new ALJ.

Sentence four of 42 U.S.C. § 405(g) states as follows:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3). "In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). Plaintiff's assertions of error are addressed as follows:

**1. Whether the ALJ erred in rejecting the opinion of Plaintiff's treating physician.**

Plaintiff contends that the ALJ committed reversible error in rejecting the opinion of Plaintiff's treating physician, Dr. James Wall, including the work-related limitations recommended by Dr. Wall. *See* Docket Entry 13 at 4. Plaintiff points to the all systems examination ("ASE") performed by Dr. Wall on October 20, 2010, in which Dr. Wall diagnosed Plaintiff with right ankle pain, lumbar disc disease, right knee pain, and right shoulder pain. *Id.*; AR 295-299. Dr. Wall also stated that Plaintiff had multiple functional restrictions:

> [Plaintiff] would be limited to 5 pounds to lift and carry. He cannot do any activity off the ground. He is very impaired as to steps, uneven terrain and high moisture conditions, bending, stooping, kneeling, rising from seated position or being able to get up from sitting on the floor, or doing overhead work or balancing, or pushing and pulling. He is not capable to have a high sense of awareness of his surroundings and any immediate threats. I do not feel that [Plaintiff] is able to seek gainful employment secondary to the reasons outlined above.

9

AR 297. Plaintiff argues that the ALJ "gave weight to the State agency assessments," instead of properly weighing the opinion of Dr. Wall, which Plaintiff contends is "well supported by medically acceptable clinical and laboratory diagnostic techniques. . ." *See* Docket Entry 13 at 7.

The Court notes that despite Plaintiff's contention otherwise, Dr. Wall specifically states in his ASE report that "[n]o x-rays or imaging were available to review." AR 297. Plaintiff argues that Dr. Wall's opinions "are not inconsistent with the other substantial evidence in [Plaintiff's] case record," *See* Docket Entry 13 at 7, but cites no evidence in the record that supports Dr. Wall's opinion regarding Plaintiff's alleged limitations. With the exception of two sentences, Plaintiff's argument appears to be little more than a recitation of Dr. Wall's notes and the ALJ's findings without any discussion of the errors allegedly contained therein. *Id.* at 4-7.

Defendant counters that the ALJ "properly and thoroughly weighed the medical evidence and opinions of record." *See* Docket Entry 19 at 13. Without directly addressing Dr. Wall's opinions, Defendant claims generally that the ALJ's RFC assessment was supported by the medical evidence and the opinions contained in the record. *Id.* Defendant similarly appears to rely on little more than a recitation of Plaintiff's treatment to show that the ALJ properly considered Dr. Wall's opinion. *Id*. at 7-14.

An explanation as to how opinion evidence is evaluated by the ALJ is found in 20 CFR § 416.927. When an ALJ does not give the treating physician's opinion controlling weight, as is the case here, several factors are to be considered, including the following:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as

consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 CFR § 416.927(c)(2). The ALJ clearly gave little weight to the opinion of the treating physician in this matter. AR 28. The Court must therefore determine whether the ALJ gave sufficiently "good reasons" for this decision, as required by 20 CFR § 416.927.

With respect to Plaintiff's alleged physical impairments, the ALJ examined the opinions of three physicians. Dr. Wall's opinion was given "little weight" by the ALJ, while the opinions of Dr. Christopher W. Fletcher and Dr. Michael N. Ryan were afforded "some weight." AR 28. Dr. Fletcher's examination of Plaintiff consisted of a medical consultant analysis and a physical residual functional capacity assessment, both performed on January 10, 2011. AR 336-349. The medical consultant analysis included a *Drummond* and *Dennard* ("D & D") assessment, in which Dr. Fletcher reviewed and compared the ALJ's findings from the initial decision on April 7, 2010 with Plaintiff's current alleged impairments. AR 337. Dr. Fletcher lists the impairments relating to Plaintiff's right ankle, right knee, right shoulder, and bulging disc, as well as Plaintiff's hypertension and obesity. AR 337. Dr. Fletcher's findings, which are discussed by the ALJ in his opinion, note that there are no medical records to support significant changes following ALJ Lawrence's April 7, 2010 decision. AR 27, 339. Dr. Fletcher also notes that the findings contained in Dr. Wall's October 20, 2010 ASE "are not materially different" from the findings relied upon by

ALJ Lawrence in reaching her decision. AR 27, 339. Dr. Fletcher further notes that the objective findings from the x-ray of Plaintiff's right knee were not consistent with the "marked" decrease in range of motion found by Dr. Wall. AR 27, 339. This is significant as all of Dr. Wall's findings appear to have been based on Plaintiff's own account of his symptoms, and not on objective diagnostic findings.

In his report of contact from May 13, 2011, Dr. Ryan affirmed Dr. Fletcher's opinion regarding the severity of Plaintiff's alleged impairments. AR 358. Dr. Ryan reviewed Plaintiff's medical records and found that ALJ Lawrence's initial assessment of Plaintiff's condition was correct, and further found that Dr. Fletcher's D & D assessment was correct. AR 358. The ALJ discussed these finding in his decision, including Dr. Ryan's opinion that the medical records documenting Plaintiff's treatment after ALJ Lawrence's April 7, 2010, decision did not support any further physical limitations. AR 28, 358.

The ALJ noted that Plaintiff sought treatment with Dr. Wall from April 8, 2010, the date of alleged onset, through March 2, 2012. AR 25. Although these office notes are mostly illegible, it appears that Plaintiff treated with Dr. Wall twenty-four times during that period. AR 280-85, 350-54, 359-72. This is a significant factor in weighing an ALJ's assessment of the treating physician's opinion:

> Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 CFR § 416.927(c)(2)(i). The ALJ should also consider the nature and extent of the treatment relationship between the claimant and the medical provider:

> Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 CFR § 416.927(c)(2)(ii). The ALJ is further directed to consider the relevant evidence presented by the medical provider in support of his opinion, the consistency of the medical provider's opinion with the record as a whole, and whether the medical provider is a specialist with respect to the impairments allegedly suffered by the claimant. 20 CFR § 416.927(c)(3), (4), and (5).

Dr. Wall has stated that he is a medical physician engaged in family practice in Smithville, Tennessee. AR 373. This does not necessarily constitute a "specialist" under 20 CFR § 416.927(c)(5) with respect to the alleged injuries to Plaintiff's shoulder, back, knee, and foot, although Dr. Wall undoubtedly treats adult patients with similar symptoms regularly in his practice. The Court also notes that the two physicians whose opinions were afforded "some weight" by the ALJ, Dr. Christopher W. Fletcher and Dr. Michael N. Ryan, do not appear to be specialists with regard to Plaintiff's alleged impairments either. There is no indication that Plaintiff sought treatment from a specialist at any point in time.

Because Dr. Wall's office notes are mostly indecipherable, it is difficult to assess "the treatment [he] has provided" and "the kinds and extent of examinations and testing [he] has

performed. . .," pursuant to 20 CFR § 416.927(c)(2)(ii). There is no indication in the record that Dr. Wall ordered any x-rays or other imaging services to obtain objective findings relating to Plaintiff's alleged symptoms. Instead, Dr. Melvin L. Blevins ordered x-rays of Plaintiff's lumbar spine, right knee, right foot, and right shoulder on November 30, 2010, at the request of the Tennessee Disability Determination Services ("DDS"). AR 27, 311-12. Furthermore, although these x-rays took place after Dr. Wall's October 20, 2010 ASE, there is no indication that Dr. Wall addressed the findings of the x-rays during any of his numerous visits with Plaintiff after November 30, 2010. Dr. Wall also failed to reference the findings from these x-rays in his affidavit. AR 373-74. This is significant under 20 CFR § 416.927(c)(3), as Dr. Wall appears to have based his opinion solely on physical examinations and Plaintiff's own statements regarding the severity of his symptoms. While it is possible that Dr. Wall considered these x-rays, it is perplexing that he failed to address the findings contained therein at any point in his treatment of Plaintiff.

In light of this apparent oversight by Dr. Wall, the Court finds that there is some question as to whether his opinion is consistent with the record as a whole under 20 CFR § 416.927(c)(4). Plaintiff's memorandum is unhelpful in this regard, as it fails to reconcile Dr. Wall's opinion with the objective findings from the November 30, 2010 x-rays. Plaintiff instead provides a summary of Dr. Wall's treatment, including an undeveloped emphasis on Plaintiff's weight fluctuation, Docket Entry 13 at 16-21, before stating simply that "[t]here was and is very clear and objective evidence in the record to support [Plaintiff's] allegations of impairments, including his increased pain, increased breathing problems and increased mental limitations since the prior hearing." *Id*. at 27. Plaintiff references the November 30, 2010, x-rays, *id*. at 21-22, but does nothing more than quote the x-ray report, essentially verbatim. The Court finds Plaintiff's argument to be lacking.

Nevertheless, the objective findings from the aforementioned x-rays must be considered in order to determine whether Dr. Wall's opinion is consistent with the record as a whole. Defendant quotes the ALJ's opinion, which notes that the x-ray of Plaintiff's right knee "showed findings inconsistent with the alleged marked decreased range of motion." *See* Docket Entry 19 at 12; AR 27. Defendant is correct that, while the x-ray demonstrated early degenerative arthritis in the right knee, it was "otherwise normal." AR 311. However, there were also multiple "abnormal" findings by Dr. Blevins, including evidence of an acute and chronic lumbar spine strain, early degenerative disc disease, and osteoarthritis in the lumbar spine. AR 311-12. An x-ray of Plaintiff's right foot showed evidence of a complex fracture of the right ankle and right foot with a surgical screw located in the distal fibula, as well as other surgical screws and devices "in and around the tarsal bones of the [right] foot consistent with complex mid foot fracture requiring operative intervention." *Id.* An x-ray of Plaintiff's right shoulder was also abnormal, suggesting a "rotator cuff injury and traumatic injury requiring surgical revision of the distal aspect of the clavicle as it associates with the acromion of the scapula." *Id.*

In contrast, Dr. Wall's diagnosis of Plaintiff's condition included only, "[m]uscle skeletal pain, instability and decreased range of motion of the neck, right shoulder, low back, right knee and right ankle." AR 297. This opinion, which includes a statement that Plaintiff is "[un]able to seek gainful employment," AR 297, is inconsistent with the assessment of Dr. Fletcher who, notably, reviewed the x-ray report before opining that the findings did not demonstrate any significant changes in Plaintiff's condition following his initial application for SSI. AR 339. As previously discussed, Dr. Fletcher further opined that the findings contained in Dr. Wall's ASE were not "materially different" from those relied on by ALJ Lawrence in Plaintiff's initial hearing, including

15

a finding that Plaintiff's right ankle was "well-healed with minimal postoperative arthritic changes." AR 72. Dr. Fletcher's assessment was affirmed by Dr. Ryan. AR 358. The ALJ weighed these independent assessments, including Dr. Fletcher's review of the objective evidence from the November 30, 2010 x-rays, in finding that Dr. Wall's opinion was not supported by the totality of the medical record.

As discussed above, the affidavit prepared by Dr. Wall fails to reference any of the objective findings from the November 30, 2010 x-rays.[2] AR 373-74. Moreover, Dr. Wall recommends functional limitations in addition to those contained in his October 20, 2010, ASE without referencing any examination or other findings that would suggest worsening of Plaintiff's symptoms. AR 373-74. Dr. Wall instead appears to base these additional limitations exclusively on Plaintiff's statements regarding the severity of his symptoms. This is evidenced by the statement in his affidavit, "[Plaintiff] tells me he rests lying down the majority of the day. . . after sitting or standing/walking for 5 to 10 minutes, he is in such pain that he has to lie down for relief," which he writes immediately after prescribing a functional limitation of walking and standing for five (5) minutes at a time. AR 373-74. The ALJ is required to examine the type of treatment a treating source provides a claimant, including the "kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories." 20 CFR § 416.927(c)(2)(ii). Despite treating Plaintiff on a number of occasions, Dr. Wall did not feel it was necessary to refer Plaintiff to a specialist for any of his alleged impairments at any point in time. The

---

[2] The Court notes that this affidavit appears to have been a last minute attempt by Plaintiff to get a legible opinion from Dr. Wall into evidence prior to his hearing before the ALJ on April 12, 2012, as it was faxed to the Social Security Administration by Plaintiff's counsel at 2:08 p.m. on April 11, 2012. AR 375.

ALJ discussed Dr. Wall's opinion and found that it was not supported by the totality of the medical evidence contained in the record. The Court thus finds that there is substantial evidence to support the ALJ's decision to give little weight to Dr. Wall's opinion regarding Plaintiff's physical impairments.

With respect to alleged mental impairments, Plaintiff again fails to provide a persuasive argument that the ALJ erred in his decision. Plaintiff instead recites the evidence in the record, nearly verbatim, for the vast majority of his brief. AR 8-27. The only discernible argument pertaining to mental impairment involves a recitation of the mental residual functional capacity assessment performed by Dr. Fawz Schoup, followed by a simple assertion that this mental RFC is "unrealistic, contradictory and overly optimistic considering the opinion of the examining, consultant assessment of Dr. Berry[3]. . ." *See* Docket Entry 13 at 26. Because Plaintiff does little more than recite the findings of Dr. Berry-Sawyer and Dr. Schoup, the Court will examine these opinions in detail.

Dr. Berry-Sawyer performed a psychological evaluation of Plaintiff on November 3, 2010. Dr. Berry-Sawyer noted that while Plaintiff "appeared to be an adequate historian," his responses at times suggested malingering. AR 305. Dr. Berry-Sawyer noted that this behavior could also be attributed to the head injury Plaintiff claims to have suffered in 2003. AR 304-05. She further noted that Plaintiff had never received outpatient or inpatient treatment for mental health problems. AR 302. Dr. Berry-Sawyer summarized her findings as follows:

> [Plaintiff] appears to fall into the Borderline to Low Average range of intellectual functioning. He showed evidence of mild to moderate impairment in his short term

---

[3] The Court assumes Plaintiff refers to Dr. Kimberlee Berry-Sawyer.

memory. He showed evidence of moderate impairment in his ability to sustain concentration. He showed evidence of moderate impairment in his long term and remote memory functioning.

AR 305. Dr. Berry-Sawyer further found that Plaintiff "appears to be able to follow instructions, both written and spoken," and that he demonstrated evidence of "moderate impairment in his social relating." AR 305. Based on these findings, Dr. Berry diagnosed Plaintiff with dysthymic disorder. AR 306. She also assigned Plaintiff a Global Assessment Functioning ("GAF") score of 50-55. The ALJ afforded Dr. Berry-Sawyer's opinion significant weight in his decision, AR 27, which included a finding that Plaintiff's dysthymic disorder was a severe impairment. AR 23.

On December 1, 2010, Dr. Schoup performed a medical consultant analysis. AR 314-17. She found that while Dr. Wall was correct in his assertion that Plaintiff had moderate mental limitations, his opinion should be afforded little weight because his diagnosis of Plaintiff's mental condition was inconsistent with a finding of moderate limitations. AR 315. In light of her finding that Plaintiff's symptoms had worsened, however, she performed a psychiatric review and mental RFC assessment. AR 315. She diagnosed Plaintiff with dysthymic disorder and a possible anxiety disorder, AR 321, 323, both of which were found by the ALJ to represent severe impairments. AR 23. Dr. Schoup also found in her mental RFC that Plaintiff had "mild" restrictions in his activities of daily living, as well as "moderate" difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. AR 328. She found no episodes of decompensation by the Plaintiff, and no demonstration of "marked" severity with respect to any of Plaintiff's functional limitations. AR 328.

Plaintiff claims that Dr. Schoup's mental RFC assessment is inaccurate based on the findings of Dr. Berry-Sawyer. *See* Docket Entry 13 at 26. However, Plaintiff fails to even specify which of Dr. Schoup's limitations are "overly optimistic," *Id.*, and fails to discuss how Dr. Berry-Sawyer's findings actually contradict those of Dr. Schoup. Plaintiff also fails to explain why the opinion of Dr. Schoup, a mental health professional, should be discounted in favor of the opinion provided by Dr. Wall, a family practice physician without a noted speciality in mental health. Moreover, despite asking this Court to invalidate the ALJ's reliance on Dr. Schoup's opinion, Plaintiff simultaneously relies on Dr. Schoup in support of his position by emphasizing two statements from her notes, including her refusal to adopt the ALJ's decision from Plaintiff's first hearing, and her notation that Plaintiff is "[n]ot capable per CE Panelist." *Id.*; AR 330.

Notwithstanding this paradox, each of these references is explained in the record. Dr. Schoup stated that the ALJ's decision from April 7, 2010, involving Plaintiff's initial application for disability benefits, is "not adopted." AR 330. She explained this decision, however, by noting that Plaintiff's moderate limitations "reflect[] worsening," and that a new psychiatric review and mental RFC assessment were therefore necessary. AR 315. She made additional diagnoses of dysthymic disorder, AR 321, and possible anxiety disorder, AR 323, both of which were determined by the ALJ to represent severe impairments. AR 23. Additionally, Dr. Schoup's statement that Plaintiff is "[n]ot capable per CE panelist," which has been underlined and placed in bold type by Plaintiff in his brief, appears to be a reference to Dr. Berry-Sawyer's assessment and certainly does not represent Dr. Schoup's opinion. Dr. Schoup refers to Dr. Berry-Sawyer as "CE panelist" elsewhere in her analysis. *See* AR 315. The Court notes that Dr. Schoup's reference to Dr. Berry-Sawyer's finding

that Plaintiff was "not capable" is somewhat ambiguous. There is only one reference in Dr. Berry-Sawyer's opinion indicating that Plaintiff is "not capable" of performing a task:

> [Plaintiff's] current psychiatric state was depressed. He shows evidence of moderate impairment in his social relating. He appears to be moderately impaired in his ability to adapt to change. He appears able to follow instructions, both written and spoken. He appears to have a good work history prior to his car accident and a poor history after the accident (according to his self-report). *He appears unable to handle finances without assistance,* at this time.

AR 305 (emphasis added). The Court notes that despite this apparent limitation, Dr. Berry-Sawyer also remarked that Plaintiff "doesn't really have a lot of bills, so he does not actively have to pay bills. . . [h]is mother helps him with his medicine and bills." *Id.*

Regardless of what Dr. Schoup intended when stating that Dr. Berry-Sawyer found Plaintiff "not capable," Plaintiff fails to explain how this opinion, or any other opinion from Dr. Schoup, contradicts the opinion expressed by Dr. Berry-Sawyer. As discussed by Defendant, Dr. Schoup's opinion was reviewed and affirmed by Dr. Frank Kupstas, who noted that while Plaintiff alleged a worsening of his symptoms, there were no additional medical records documenting any treatment for mental health. AR 356. He also noted that Plaintiff's updated activities of daily living demonstrated no "significant change." AR 356. In light of the foregoing, the Court finds substantial evidence in the record to support the ALJ's decision, and finds that the ALJ provided sufficiently good reasons for the weight he afforded the respective medical opinions.

**2. Whether the ALJ erred by failing to consider the combined effect of Plaintiff's multiple impairments.**

Plaintiff next contends that the ALJ committed reversible error in failing to consider all of Plaintiff's alleged impairments. *See* Docket Entry 13 at 8. The vast majority of Plaintiff's argument again consists of little more than a recitation of the ALJ's findings, Plaintiff's testimony, and the medical evidence found in the record. *Id*. at 8-27. After reciting significant portions of the record, Plaintiff makes one of his few discernible arguments:

> There was and is very clear and objective evidence in the record to support [Plaintiff's] allegations of impairments, including his increased pain, increased breathing problems and increased mental limitations since the prior hearing. Had the ALJ considered all of [Plaintiff's] symptoms and the objective medical evidence, he would have found [Plaintiff] disabled.

*Id*. at 27. This argument is not well taken. Despite retyping large portions of the record, Plaintiff fails to specifically identify which impairments he contends the ALJ failed to consider. Plaintiff instead lists most of his complaints and appears to request that the Court review all of the medical evidence in the record and retry his case. However, as noted above, it is not the function of this Court to try the case *de novo*. *Garner*, *supra*, at 387 (6th Cir. 1984). It is instead the Court's duty to determine whether the Commissioner's decision is supported by substantial evidence, and determine whether any legal errors were made in reaching that decision. *Richardson*, *supra*, at 401 (1971).

As discussed by Defendant, the ALJ ultimately determined that Plaintiff had both physical and mental impairments which rose to the level of "severe." *See* Docket Entry 19 at 14; AR 23. The ALJ also included both physical and mental limitations in his assigned RFC. AR 25. The ALJ set out a detailed discussion of the medical treatment Plaintiff received for both physical and mental

impairments. AR 24-28. Plaintiff's argument that the ALJ failed to consider all of his alleged impairments is unsupported by the record. The Court therefore rejects this assertion of error.

### 3. Whether the ALJ properly considered Plaintiff's testimony.

Plaintiff's final assertion of error claims that the ALJ erred by failing to find his testimony to be fully credible. Plaintiff points to the Sixth Circuit's opinion in *Floyd v. Finch*, in which the Court noted that a claimant is not required to show that he is "bedridden or completely helpless or that he is totally disabled" in order to qualify for disability benefits. *See* Docket Entry 13 at 27; *Floyd v. Finch*, 441 F.2d 73, 114 (6th Cir. 1971) (quoting *Mullen v. Gardner*, 256 F.Supp. 588, 591 (E.D.N.Y. 1966). Plaintiff then cites several physical limitations alleged during his testimony, including the necessity of taking breaks when showering and dressing and the inability to tie his shoes. *See* Docket Entry 13 at 27-28.

While a claimant's testimony regarding the severity of his symptoms is important, such testimony must be supported by objective medical evidence and the record as a whole:

> [S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled. In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you.

20 CFR § 416.929(a). Plaintiff fails, however, to cite any such evidence in support of his credibility. Plaintiff instead relies on his own testimony regarding his ability to shower, dress, and make a sandwich, claiming that such activities "certainly do not rise to the level of substantial gainful activity." *See* Docket Entry 13 at 27-28.

Whether such activities represent the ability to engage in substantial activity does little to refute the ALJ's assessment of Plaintiff's credibility. The ALJ did not find that such activities demonstrated an ability to engage in "substantial gainful activity," but instead questioned the veracity of Plaintiff's testimony regarding his symptoms and his daily activities. This is evidenced by the ALJ's statement that, "[t]he claimant has described daily activities, which are not limited to the extent one would expect, given his complaints." AR 28. The ALJ further noted that while Plaintiff testified that he experienced headaches "24/7," there was no mention of constant headaches in any of Plaintiff's medical records. *Id*. The Court also notes that while Plaintiff testified that he was unable to lift a napkin with his right hand, AR 40, even Dr. Wall's extremely severe restrictions fail to reference any limitation with respect to Plaintiff's right hand, and instead recommend a general restriction of "lifting and carrying five (5) pounds." AR 295-97, 373-74.

The ALJ also questioned the veracity of Plaintiff's testimony regarding his alleged physical limitations during the April 12, 2012 hearing, in light of his claim that his symptoms had only gotten worse since an accident in 2002:

> [ALJ]        Have you had any periods of improvement since the accident?
>
> [Plaintiff]  No, I've only gotten worse.

| [ALJ] | Well, you did work in a cabinet shop for three months in '06, 2006, and that was 10 hours a day. If you didn't have any periods of improvement, how could you have done that? |
|---|---|
| [Plaintiff] | I had a job sitting down, and I didn't, I didn't have to do any lifting or anything. It was just mainly sorting parts for frames. |
| [ALJ] | Well, there – I'll have to check that. It looks like, the way you described that cabinetwork; it was heavy. |
| [Plaintiff] | Excuse me? |
| [ALJ] | It looks like – and you, you filed a report previously, I believe, quite a few years ago about that job, and it was very heavy as you described it. |

AR 44-45. Despite Plaintiff's testimony to the ALJ that he did not do any heavy lifting during that time, he reported during his initial application for SSI that this job required walking and standing for 10 hours per day, as well as lifting up to 100 pounds. AR 74.

Additionally, the ALJ discussed the findings of Dr. Kimberlee Berry-Sawyer, who noted in her DDS Psychological Evaluation that Plaintiff's responses during her examination were sometimes inconsistent and "suggestive of possible malingering." AR 26, 305. The ALJ also contrasted Plaintiff's complaints with objective findings, specifically that the x-rays of Plaintiff's right knee "showed findings inconsistent with the alleged marked decreased range of motion" noted by Dr. Wall in his ASE. AR 27. The ALJ clearly found inconsistencies between the objective findings from the x-rays and Plaintiff's statements regarding the severity of his symptoms.

The ALJ's findings as to credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and

credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987)). Plaintiff cites only his own testimony in arguing that the ALJ improperly evaluated his credibility. The Court thus finds that Plaintiff's argument is without merit.


## V. RECOMMENDATION

For the above stated reasons, it is recommended that Plaintiff's motion for judgment on the administrative record (Docket Entry No. 14) be DENIED and that the Commissioner's decision be affirmed.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully Submitted,


BARBARA D. HOLMES
United States Magistrate Judge